UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRELL WALKER                                    CIVIL ACTION

VERSUS                                            NO. 05-6649

MS. AMANDA GERALD ET AL.                          SECTION "B" (2)


## REPORT AND RECOMMENDATION

Plaintiff, Darrell Walker, is a convicted inmate incarcerated in the Washington Correctional Institute ("WCI") in Angie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against WCI employees, Amanda Gerald, Lt. Blandon Vernon Smith and Sgt. Jason Smith, alleging that his constitutional right to doctor-patient confidentiality was breached when defendant Gerald, identified by plaintiff as WCI's medical records office coordinator, allowed non-medical personnel to deliver his medical records to him without sealing them.  Plaintiff seeks compensatory and punitive damages and transfer to another prison facility.  Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On February 21, 2006, I conducted a telephone conference in this matter. Participating were plaintiff, appearing pro se, and Phyllis Glazer and Alan Alario, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

During the conference, plaintiff testified that he has a bad memory and has written down on paper everything he knows about his case. He stated that he is currently incarcerated based on his conviction in 2003 on two counts of selling crack cocaine, for which he is serving a prison sentence of two to five years.  He confirmed that he asserts a claim in this case that the defendants breached his right to doctor-patient confidentiality by delivering medical records to him without sealing them.

Walker said he could remember nothing about his claim, except what he had already written down.  He said all he could remember is that defendant Lt. Smith came walking down the hall with his medical records, saw that plaintiff was praying and did not want to wait for him to finish before giving him the medical records, so he sent Sgt. Smith to deliver them later.  Walker alleged that Sgt. Smith was reading the medical records "and laughing."

He identified defendant Amanda Gerald as the records coordinator at the jail and said his claim against her was that she had sent the records to him without first placing

them in a sealed envelope.  Walker advised that he has another claim pending in this court concerning an assault and that he is represented by counsel in that other case, but confirmed that he is not represented by counsel in the captioned case.

Asked on what date the defendants had read his medical records, he complained that he could not remember the date and that he had already written it all down.  He blamed his inability to remember anything on his status as an ex-drug addict.  Asked what condition he might be suffering that the defendants would have seen described in his medical records, Walker stated that defendants "are walking around telling everybody I got TB (tuberculosis)."  He denied that he has tuberculosis.  He said his medical records also contain reference to his HIV testing, but he said he is not HIV positive.  He alleged that his medical records contain information that defendants "should have no knowledge of at all, period," but he clarified that the two conditions he was most concerned about were the facts that he does not have tuberculosis and that he is not HIV positive.  "Those are confidential," he said, "nobody's supposed to know that but me and my doctor."  He said that nobody, except he and his doctor, should know whether he has tuberculosis or is HIV positive.  Thus, he clarified that, regardless of any medical condition that might be reflected in his medical records, "my medical records should not have been revealed to [the defendants] period. . . .  They should have never, ever, ever, ever touched those medical records. . . . under any circumstances."  He stated, nevertheless, that the two

3

defendants named Smith were reading his medical records as they were coming down the tier to deliver them to him and that defendant Gerald sent the records without putting them in a sealed envelope or box.  He testified that the records were being sent to him by Gerald because he had requested them from the jail's medical department in connection with one of his cases.

Walker clarified that he had received the copy of the medical records that I had ordered in this case, but that they had been taken from him after they had been in his possession for about two weeks.  He said he had not had a chance to review all of the records before they were taken from him, but instead could only review about 60 pages.

In summary, Walker stated that no security officer at the jail should ever have touched his medical records, much less read them, and that "the negligence by the medical officer, by just sending them, just handing them to any old body, that jeopardizes my privacy completely. . . .  Now, if I did have something that was critical, everybody around here would know about it.  If I had HIV, everybody would know about it because these officers have read the records."  Although he confirmed that he is not HIV positive, he alleged that the officers' possession of his records, when they should not have had the records, violates his privacy interests in those records.

Walker frequently deferred in his testimony to his prior written submissions to the court because of his claimed poor memory.  In his original written complaint, plaintiff

states that "[o]n October 21, 2005, my right to medical confidentiality was breached by
its medical records office coordinator, Ms. Amanda Gerald, in that she did violate my
constitutional right to doctor-client confidentiality by giving handing (sic) my medical
records over to a non-medical professional for them to be delivered to me.  Ms. Amanda
Gerald entrusted my medical records to Lt. B.V. Smith who in turned (sic) entrusted
these same medical records into the possession of Sgt. J. Smith.  Neither Lt. Smith nor
Sgt. Smith had any direct expressed or implied authorization by me to handle this
sensitive material."  Record Doc. No. 1, Complaint at IV.

Plaintiff attached to his complaint copies of (1) his grievances, and the responses
thereto, filed in the prison's administrative remedy procedure ("ARP"); (2) his
correspondence with the Warden; and (3) Nursing Director Bessie Carter's unsigned
memorandum dated October 31, 2005 in response to plaintiff's letter to the Warden, in
which Carter states:  "I have been advised by Ms. Gerald that she did in fact ask Lt.
Vernon Smith to hand you the copy of your medical record which was secured with a
rubber band and had the letter of receipt on the front of the medical record copies for you
to sign.  There was no breech (sic) in confidentiality due to the fact that the copies were
secured with a rubber band and had the receipt on top.  I have instructed her that she is
not to do this in this manner in the future but that she is to get security to bring you into

the court room for you to sign the receipt and to receive the copies of your medical record. . . ."  Record Doc. No. 1, Attachments to Complaint at pp. 6-10.

In his statement of facts submitted in response to the court's order, Record Doc. Nos. 5 and 11, plaintiff states:  "On October 21, 2005, the Defendant, Ms. Amanda Gerald, did in fact violate my right to medical confidentiality by entrusting my medical records, without my permission, with non-medical personnel, i.e. members of the security staff, to (sic) allegedly to be delivered to me, the Plaintiff.  This act caused a casual and unjustified act of dissemination of my confidential medical information to non-medical staff members and while Defendant Lt. Blandon Vernon Smith was allegedly delivering them, yet, he appeared to be reading the top sheet while walking up to my cell.  Then, Sgt. Jason Smith while he was allegedly delivering the same records about an hour after Lt. Brandon[1] Vernon Smith attempted to deliver was also appearing to be reading the first and second sheet of the records[.]  [T]hese medical records contain highly classify (sic) personal (sic) such as TB testing with there (sic) results and HIV testing with there (sic) results that are to be ke[pt] confidential, . . ."  Plaintiff's Statement of Facts and List of Witnesses and Exhibits, Record Doc. No. 11, ¶ III at p.2.

---

[1] Plaintiff identified this defendant in all other instances as Lt. <u>Blandon</u> Vernon Smith.

6

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

7

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest

8

which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

II.   PRIVACY RIGHTS

A prisoner has no clearly recognized constitutional right in the privacy of his medical records, particularly not in the Fifth Circuit.  Although a small number of federal courts have recognized such a right in extremely limited circumstances, others have

---

[2]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

9

declined to recognize such a right and instead have stated that "whether inmates have a constitutional right to privacy in their medical records is far from settled.  Although [the Second and Third Circuit] courts of appeals have recognized such a right, the Court of Appeals for the Seventh Circuit has not."  Cole v. Litscher, No. 04-C-116-C, 2005 WL 1075515, at *5 (W.D. Wis. May 6, 2005) (Crabb, J.) (citing Massey v. Helman, 196 F.3d 727, 742 n.8 (7th Cir. 1999) ("'Whether prisoners have any privacy rights in their prison medical records and treatment appears to be an open question.'") (internal citation omitted); Doe v. Delie, 257 F.3d 309, 317 (3d Cir. 2001); Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999)).

In Cole, for example, the district court rejected the existence of such a right in the factual circumstances described in that case.  The court stated that it was

> inclined to view any disclosure of information about plaintiff's high blood pressure as too innocuous to amount to a violation of any constitutional right to privacy plaintiff might have. . . .  Even [if] plaintiff had shown that his file contained sensitive information, he has not submitted evidence showing that the security officers who were given plaintiff's medical history opened the envelope it came in and read through it.  This appears to be pure speculation on plaintiff's part.

Id.

By contrast, the Second and Third Circuits have recognized such a right only in the very limited context of either HIV-positive or transsexual status, in part because of "the social stigma, harassment, and discrimination that can result from public knowledge

10

of one's affliction with AIDS," Doe v. Southeastern Pa. Transp. Auth. (SEPTA), 72 F.3d 1133, 1140 (3d Cir. 1995), and "[t]he excruciatingly [sic] private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter." Powell, 175 F.3d at 111. "It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information." Doe v. Delie, 257 F.3d at 317 (citing Doe v. SEPTA, 72 F.3d at 1140; Powell, 175 F.3d at 112).

In the instant case, Walker specifically denies that he has any serious or extremely sensitive medical condition, such as HIV, that might entitle him to the very limited constitutional protection recognized in two circuits, but not the Fifth Circuit. Other courts have recognized that prisoners do not have a constitutional privacy interest in other types of medical conditions, which, even though potentially embarrassing, are not of the "[t]he excruciatingly [sic] private and intimate nature" of HIV and transsexualism. See, e.g., Rodriguez v. Ames, 287 F. Supp. 2d 213, 220 (W.D.N.Y. 2003) (Larimer, J.) (prisoner had no privacy interest in diagnosis of "proctitis, a nontoxic inflammation of the mucose tissue of the rectum, and internal hemorrhoids"); Webb v. Goldstein, 117 F. Supp. 2d 289, 298 (S.D.N.Y. 2000) (no right to privacy in information concerning treatment for various genital conditions). Thus, there is no clearly established

constitutional right to privacy in a prisoner's medical records, and particularly not in the circumstances described by Walker.

The only other possible basis on which Walker may base a federal claim in this case is the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, §§261-264, 110 Stat. 1936 (1996). HIPAA is the federal statute which generally provides for confidentiality of medical records.

However, HIPAA provides no express or implied private cause of action for its violation and the district courts have consistently rejected any argument to the contrary, as have the legal commentators who have examined the statute. Cassidy v. Nicolo, No. 03-CV-6603-CJS, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005) (Siragusa, J.) (citing University of Colo. Hosp. Auth. v. Denver Publ. Co., 340 F. Supp. 2d 1142, 1145 (D. Colo. 2004); Brock v. Provident Am. Ins. Co., 144 F. Supp. 2d 652, 657 (N.D. Tex. 2001); O'Donnell v. Blue Cross Blue Shield, 173 F. Supp. 2d 1176, 1180 (D. Wyo. 2001); Wright v. Combined Ins. Co. of Am., 959 F. Supp. 356, 363 (N.D. Miss. 1997); Means v. Ind. Life & Accident Ins. Co., 963 F. Supp. 1131, 1135 (M.D. Ala. 1997); A. Craig Eddy, A Critical Analysis of Health and Humans Services' Proposed Health Privacy Regulations in Light of the Health Insurance Privacy and Accountability Act of 1996, 9 Annals Health L. 1, 32 (2000); Francoise Gilbert, Emerging Issues in Global Aids Policy; Preserving Privacy, 25 Whittier L. Rev. 273, 289 (2003); Joy L. Pritts,

Altered States: State Health Privacy Laws and the Impact of the Federal Health Privacy Rule, 2 Yale J. Health Pol'y L. & Ethics, 325, 343 (2002); Frederick Y. Yu, Medical Information Privacy under HIPAA: A Practical Guide, Colorado Lawyer, May 2003, at 22)).

"In the absence of any argument on plaintiff's behalf that HIPAA authorizes a private right of action, the court declines to find one sue sponte." Id.

Thus, the only remaining possible basis for Walker's claim is state law.

III.    MERE NEGLIGENCE

Plaintiff's allegation that non-medical personnel were allowed to deliver and read his unsealed medical records to him asserts a negligence claim at best, not a claim of civil rights violations cognizable under Section 1983. Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property." Daniels v. Williams, 474 U.S. 327, 328 (1986); accord Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In a number of contexts, the Fifth Circuit has determined that allegations amounting to negligence cannot support a Section 1983 claim.  Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence is insufficient to support a failure to protect claim under Section 1983);  Eason v. Thaler, 73 F.3d 1322, 1328-29

(5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care).

Walker's allegations concerning his medical records do not amount to a violation of constitutional rights.  Defendants cannot be liable under Section 1983 for injuries resulting from alleged acts of negligence.  If plaintiff seeks to recover damages allegedly resulting from negligence, he should do so in state court by asserting state law tort claims, not Section 1983 constitutional violations.  28 U.S.C. § 1367(c)(3) and (d).

In addition, Louisiana law recognizes a circumscribed privilege for medical records.  Like HIPAA, however, Louisiana law does not permit a private cause of action for breach of this privilege.  La. Rev. Stat. § 13:3715.1(B).

IV.   STATE LAW CLAIMS

Any claims asserted by plaintiff that would constitute negligence under state law are not within this court's supplemental subject matter jurisdiction in the absence of a

cognizable federal claim.  If my recommendation to dismiss plaintiff's Section 1983 claims is accepted by the presiding district judge, plaintiff will have no federal claims remaining in this action, and the court will have no supplemental jurisdiction over his state law claims.  28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Id. § 1367(c)(3).  The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); accord Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

In the instant case, no trial date has been set and the parties have not yet commenced discovery.  These proceedings remain at the earliest screening stage for pro se and in forma pauperis complaints.  No possible basis for federal subject matter jurisdiction is apparent from the face of this complaint.  Accordingly, pursuant to Section 1367(c) and having balanced the relevant factors of judicial economy, convenience,

fairness, and comity, the court should decline to exercise jurisdiction over Walker's state law claims and dismiss them without prejudice for all purposes contemplated by 28 U.S.C. § 1367(d).  Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587 (5th Cir. 1992); Newport Ltd. v. Sears, Roebuck & Co., 941 F.2d 302, 307 (5th Cir. 1991).

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1) and that his state law claims, if any, be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___8th___ day of June, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

17